UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAND AND BUILDINGS INVESTMENT
MANAGEMENT, LLC, a Delaware limited
liability company,

      Plaintiff,

v.

      Case No. 17-11576

      Hon. John Corbett O'Meara

TAUBMAN CENTERS, INC., a Michigan
corporation, and Relief Defendants ROBERT
S. TAUBMAN, WILLIAM S. TAUBMAN,
and GAYLE TAUBMAN KALISMAN,
R&W-TRG LLC, TAUBMAN VENTURES
GROUP LLC, TG PARTNERS, and TF
ASSOCIATES, LLC,

      Defendants.

_____/

## OPINION AND ORDER GRANTING
## <u>DEFENDANTS' MOTION TO DISMISS</u>

Before the court is Defendants' motion to dismiss, filed June 23, 2017,

which has been fully briefed.   The court heard oral argument on August 10, 2017,

and took the matter under advisement.   For the reasons explained below,

Defendants' motion is granted.

## <u>BACKGROUND FACTS</u>

This action arises under § 14(a) of the Securities and Exchange Act of 1934,

15 U.S.C. § 78n(a).   Plaintiff Land and Buildings Investment Management, LLC, contends that Defendant Taubman Centers, Inc. issued a materially false or misleading proxy statement in advance of the company's June 1, 2017 annual meeting of shareholders.   Plaintiff also alleges that Defendant breached its articles of incorporation.   To remedy the alleged proxy violations, Plaintiff seeks a new meeting or, alternatively, an order requiring Plaintiff's nominees to be seated on the board.   See Amended Compl. (hereinafter "Compl.") at ¶ 1.

Plaintiff is an investment advisor that has purchased shares in Taubman Centers, Inc. ("Taubman Centers").   Taubman Centers was founded by A. Alfred Taubman and went public as a real estate investment trust in 1992.   Taubman Centers' only asset is approximately 71% of the Taubman Realty Group Limited Partnership ("TRG"), a limited partnership that owns and manages shopping centers.   See Compl. at ¶¶ 26-27.   The remaining 29% of TRG is owned predominately by members of the Taubman family, including siblings Robert S. Taubman, William S. Taubman, and Gayle Taubman Kalisman, through the Defendant entities R&W-TRG, LLC, Taubman Ventures Group, LLC, TG Partners, and TF Associates, LLC.   Id. at ¶¶ 18-25, 27.

As a result of a restructuring in 1998, the partnership committee that

managed TRG's assets was eliminated.   See 1998 Form 8-K at 1; 1992 Prospectus

at 8.[1]   Management of TRG's assets was moved to Taubman Centers' board. Id.

This move would have disenfranchised TRG partners (such as the Taubman

family), who had a right to four seats on TRG's partnership committee.   To offset

this loss of management rights at the TRG partnership level, Taubman Centers

created a new class of preferred stock – Series B stock – which was issued only to

TRG partners (other than Taubman Centers).   See 1998 Form 8-K at 1; Compl. at

¶¶ 29-30.   Each share of Series B Stock entitles the holder to one vote on all

matters submitted to Taubman Centers' shareholders.   Id.   Series B stockholders

are not entitled to dividends or earnings, and the shares have a liquidation value of

$.001.   Id.   Series B stock is convertible to common stock at a ratio of 14,000

shares of Series B preferred stock for one share of common stock.   Id.   In other

words, Series B preferred stock gives TRG minority partners voting rights in

Taubman Centers, but has nominal economic value.   See also 1998 Form 10-K

(approximately 31 million shares of Series B stock for an aggregate offering price

of $38,400).   Taubman Centers' Series B preferred stock does not trade separately

---

[1]  "[T]his Court may consider the full text of the SEC filings, prospectus, analysts'
reports and statements 'integral to the complaint,' even if not attached, without converting
the motion into one for summary judgment under Fed. R. Civ. P. 56." Bovee v. Coopers
& Lybrand C.P.A., 272 F.3d 356, 360–61 (6th Cir. 2001).

from units in the operating partnership (TRG); they are considered "stapled" together. Compl. at ¶30.

For tax reasons, Taubman Centers' charter generally prohibits any single person from owning more than 8.23 percent of the value of its capital stock (common and preferred).   See Restated Articles of Incorporation at 30; Compl. at ¶¶ 30-34.   The Taubman family constitutes a "person" under the charter and therefore cannot own more than 8.23 percent of value Taubman Centers' stock. Taubman Centers' proxy materials state that the Taubman family's ownership of the Series B stock, with its nominal economic value, does not violate the 8.23 percent ownership limit.   See 2017 Proxy Statement at 14.

Plaintiff contends that the Taubman family's Series B stock in Taubman Centers provides the Taubman family with 30% of the voting power of Taubman Centers' shares.   Plaintiff asserts that the value of the Series B stock should be considered in conjunction with the value of the Taubman family's partnership units in TRG (to which it is "stapled"), and that together the total ownership interest (30.2%) exceeds the 8.23 percent ownership limit.   See Compl. at ¶ 45.

Under the Taubman Centers' charter, stock owned in excess of the ownership limit are "Excess Shares" that may not be voted by the individual. Plaintiff contends that the Taubman family's Series B stock violates the 8.23

percent ownership limit and was improperly voted at the company's June 1, 2017 annual meeting.

Plaintiff alleges that Taubman Centers' proxy statement contains the following false and misleading statements: (1) that Series B preferred stock has a value of 1/14,000ths of the value of one share of common stock; (2) the Taubman family's ownership of Series B preferred stock does not violate the charter's 8.23 percent ownership limit; (3) the Taubman family is entitled to an approximately 30% voting interest at the annual meeting, based upon their ownership of Series B preferred stock. Plaintiff also claims that Taubman Centers violated its charter by permitting the Taubman family to own more than 8.23 percent of the value of the company's outstanding capital stock. Plaintiff's complaint alleges the following counts: Count I, violation of Section 14(a) of the Exchange Act; Count II, breach of contract based upon a breach of the charter; and Count III, declaratory judgment.

**LAW AND ANALYSIS**

## I.     **Standard of Review**

Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim

to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). <u>See</u> <u>also</u> <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949-50 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. at 1949. <u>See</u> <u>also</u> <u>Hensley Manuf. v. Propride, Inc.</u>, 579 F.3d 603, 609 (6th Cir. 2009).

## II.  <u>Section 14(a) Claim</u>

Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), provides that it is a violation of the Act to violate the rules promulgated by the SEC thereunder. Rule 14a-9 prohibits the solicitation of proxies by communications that are "false or misleading with respect to any material fact." 17 C.F.R. § 240.14a-9. The purpose of section 14(a) is "to promote the free exercise of the voting rights of stockholders by ensuring that proxies would be solicited with explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought." <u>Mills v. Electric Auto-Lite Co.</u>, 396 U.S. 375, 381 (1970) (citation omitted).

In order to establish a section 14(a) violation, the plaintiff must show "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the

particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 228 (3d Cir. 2007).

Plaintiff alleges that the proxy statement misrepresented the value of Series B preferred stock, that the Taubman family's ownership of Series B stock does not violate the 8.23% ownership limit, and that the Taubman family is entitled to a 30% voting interest. Plaintiff's allegations are based upon its theory that Series B stock should be considered significantly more valuable than 1/14,000 per share of common stock and that, if Plaintiff's valuation is used, the Taubman family's ownership of Series B stock would constitute more than 8.23% of the value of Taubman Centers' stock, thus exceeding the ownership limit.

Plaintiff's belief that Series B stock should be valued differently does not render the proxy statement misleading. Taubman Centers is not required to adopt or disclose Plaintiff's legal theory about the correct valuation of Series B stock. Taubman Centers has "no duty to disclose legal theories as to how a given transaction violated the law," nor is it necessary "to characterize facts in a proxy solicitation if the facts themselves are disclosed." Bolger v. First State Fin. Servs., 759 F. Supp. 182, 194, 196 (D. N.J. 1991). See also Bertoglio v. Texas Int'l Co., 488 F. Supp. 630, 649 (D. Del. 1980) ("[T]he federal proxy rules do not require

disclosure of a disputed legal theory regarding the legality of transactions approved by the Board of Directors, nor do they require disclosure of one's opponent's characterization of the facts.") (citing <u>Ash v. LFE Corp.</u>, 525 F.2d 215, 220 (3d Cir. 1975) and <u>Golub v. PPD Corp.</u>, 576 F.2d 759, 765 (8th Cir. 1978)); <u>Freedman v. Barrow</u>, 427 F. Supp. 1129, 1144 (S.D.N.Y. 1976) ("Failure to disclose a legal theory with which those soliciting do not agree and which was not called to their attention at the proper time does not violate Rule 14a-9.").

The value of Series B stock and the voting power of the Taubman family is set forth in Taubman Centers' April 20, 2017 proxy statement: "[O]ne share of Series B Preferred Stock has a value of 1/14,000th of the value of one share of common stock. Accordingly, the foregoing ownership of Voting Stock does not violate the Ownership Limitations set forth in the Articles." <u>See</u> Compl. at ¶ 57. The proxy statement also provides that the Taubman family is entitled to an approximately 30% voting interest in Taubman Centers, based upon their ownership of Series B preferred stock. <u>Id.</u> at ¶ 58. Plaintiff's contention that this information is misleading is based upon its disputed legal theory that Series B preferred stock should be valued differently, which Taubman Centers is not obligated to disclose in its proxy statement.

Moreover, Taubman Centers issued a supplemental proxy statement,

advising shareholders of Plaintiff's lawsuit and attaching the complaint.
See Defs.' Ex. 6 (Schedule 14A). The supplemental proxy statement was filed on May 22, 2017, prior to the annual meeting on June 1, 2017. Thus, shareholders received information regarding Plaintiff's stock valuation theory and its allegations regarding the charter breach before voting. To the extent Taubman Centers had an obligation to disclose this information, it has done so, curing any deficiency in the original proxy statement. See Bolger, 759 F. Supp. at 196. The court will dismiss Plaintiff's section 14(a) claim.

## III.   Breach of Contract Claim

Plaintiff's breach of contract claim is based on the allegation that the company's charter is a contract and that the company breached it by permitting the Taubman family to own in excess of 8.23 percent of the value of the outstanding stock. However, the charter itself establishes that the liquidation value of Series B preferred stock is $.001 per share and that Series B stock is convertible at a ratio of 14,000 to 1. See Restated Articles of Incorporation of Taubman Centers, Inc. at 5. According to the proxy statement, the Board used this valuation formula to assign nominal value to Series B stock and conclude that the Taubman family's holdings did not violate the ownership limit. Compl. at ¶ 57. Plaintiff's theory that the Taubman family owns stock in excess of the 8.23 percent value limit requires the

court to ignore the Series B preferred stock valuation formula as set forth in the charter.

Moreover, the charter provides that "[a]ny question regarding the application of any of the provisions of this Subsection (d) of this Section 2 of this Article III [including the ownership limit, total value, and market price of stock] . . . shall be determined or resolved by the Board of Directors and any such determination or resolution shall be final and binding on the Corporation, its shareholders, and all parties in interest." Restated Articles of Incorporation at 35.   See also id. at 29-30 (§ 2(d)(i)) and 33 (§2(d)(ii)(f)(3)).   In other words, the Board's determination that the value of the Taubman family's stock has not exceeded the ownership limit is final and binding on shareholders, including Plaintiff.

Plaintiff attempts to avoid this result by arguing that the Board's determination of value is a matter that is outside the pleadings and that Plaintiff's value theory must be accepted as true.[2]   But Plaintiff's amended complaint quotes the 2017 Proxy Statement, in which the company provides its determination of the value of Series B stock:

The Series B Preferred Stock is convertible into shares of

_____

[2] Plaintiff also points out that the charter requires that the Board must determine the market price of Series B stock "in good faith."   Plaintiff's complaint, however, makes no allegation that the Board failed to act in good faith.

common stock at a ratio of 14,000 shares of Series B
Preferred Stock to one share of common stock, and
therefore one share of Series B Preferred Stock has a
value of 1/14,000th of the value of one share of common
stock.   Accordingly, the foregoing [Taubman family]
ownership of Voting Stock does not violate the
Ownership Limitations set forth in the Articles.

Compl. at ¶57.   The Amended Complaint also alleges that the company considers

the Series B stock to have "nominal value." Compl. at ¶ 43.   The Board's

valuation of Series B stock is not, therefore, outside of the pleadings, but is

expressly alleged.   Moreover, this "nominal" valuation is consistent with the

formula set forth in the charter, the express terms of which preclude Plaintiff's

breach of contract claim.   <u>See</u> <u>KSR Int'l Co. v. Delphi Auto Sys. LLC</u>, 523 Fed.

Appx. 357, 362 (6th Cir. 2013) (affirming dismissal when the plaintiff's claim was

"directly refuted by the terms of the very contractual agreement its breach of

contract claim is based on").   Plaintiff's valuation theory – that a share of Series B

stock is worth significantly more than 1/14,000th of a share of common stock and

that the value of TRG partnership units must be considered when valuing Series B

stock – is directly contradicted by Taubman Centers' charter.

Accordingly, the court will dismiss Plaintiff's breach of contract claim.

Because no substantive claim remains, the court will also dismiss Plaintiff's

declaratory judgment claim.

# ORDER

IT IS HEREBY ORDERED that Defendants' motion to dismiss is

GRANTED.


Dated: <u>August 16, 2017</u>                    <u>s/John Corbett O'Meara</u>
                                        John Corbett O'Meara
                                        United States District Judge


### Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. Mail addresses disclosed on the Notice of Electronic Filing on August 16, 2017.

                                        <u>s/Teresa McGovern</u>
                                        Case Manager Generalist